**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 180748-U

Order filed July 20, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0748 Circuit No. 06-CF-1579 |
| | ) | |
| VICTOR RUSSELL, | ) ) | Honorable Paul P. Gilfillan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE O'BRIEN delivered the judgment of the court.
Presiding Justice McDade and Justice Holdridge concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  Defendant failed to make a substantial showing of a claim of ineffective assistance of appellate counsel.

¶ 2     Defendant, Victor Russell, appeals the dismissal of his postconviction petition at the second stage of postconviction proceedings. Specifically, defendant contends that he made a substantial showing that his appellate counsel provided ineffective assistance by failing to argue that the Peoria County circuit court erred in admitting evidence of other bad acts during defendant's trial. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Defendant was charged with four counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2006)) for allegedly causing the death of his girlfriend, Carla Spires.

¶ 5        Prior to defendant's jury trial, the State filed a notice of intent to use evidence of defendant's prior bad acts. Specifically, the State sought to introduce the testimony of Rosaliyn Spires, the victim's daughter, concerning a prior incident where she observed defendant dragging the victim by her arms after an argument. The State also sought to introduce the testimony of John Peters concerning two incidents. During the first incident, defendant showed Peters his pocketknife and said that if he could not have the victim, no one else could. During the second incident, defendant and the victim got into an argument, and defendant then ripped up photographs of him and the victim.

¶ 6        The court eventually ruled that it would allow Rosaliyn's testimony to show identity and intent. The court found that the probative value of this testimony outweighed the prejudice to defendant. The court ruled that it would admit Peters's testimony concerning the first incident to show "design, motive and intent regarding the relationship" between the victim and defendant, but it would not admit his testimony concerning the second incident.

¶ 7        The evidence presented at the jury trial was described in detail in our opinion in defendant's direct appeal (see *People v. Russell*, 409 Ill. App. 3d 379, 382-88 (2011)), but we will summarize the relevant evidence here. The evidence showed that the victim had been in an on-and-off dating relationship with defendant for approximately two to three years before her death. On the night of the incident, the victim's body was found outside her house between the stairs leading up to the house and a car that was parked in the driveway. She had several deep lacerations to her neck.

¶ 8    On the night of the victim's death, Gail Jackson saw defendant and the victim in the bar where she was working. They entered the bar separately after 6:30 p.m. Defendant approached the victim and it appeared that "there was a little altercation" between them. The victim walked away. Jackson later heard defendant say loudly to the victim, "[I]f you don't want me just tell me." Jackson then noticed that they were both gone. Jackson estimated that they left sometime before 8:30 p.m.

¶ 9    Secura Rutherford, a teenage girl, testified that she lived across the street from the victim's house. At approximately 7 or 8 p.m. on the night of the incident, she heard screaming and looked out the window. She saw a man and a woman on the stairs at the victim's house. She recognized them because they lived at the house, and she saw them come and go. She had seen them shoveling snow the day before the incident. The man and woman were "kind of wrestling," and the man was pulling the woman down the stairs. He lost his grip, fell, got back up, and pulled the woman down. The man and woman fell to the ground. Rutherford could no longer see them because a car parked in the driveway blocked her view, and she stopped watching. Approximately 10 to 15 minutes later, Rutherford looked out the window and saw the man walk toward the car, pick up an object, walk away from the car, and throw the object near the woods. The object appeared to be "a knife or something." The man then walked away.

¶ 10    Several hours after the incident, police officers showed Rutherford a photographic lineup containing photographs of defendant. Rutherford was not able to identify defendant from the photographic lineup as the man she had seen. However, Rutherford was able to identify defendant the next day in an in-person lineup. Rutherford also identified defendant in court as the man she saw on the evening of the incident.

¶ 11        A police officer recovered a box cutter in the wooded area behind the victim's house. The box cutter had visible hair and blood on it. Forensic testing revealed that the blood on the box cutter contained the victim's DNA. A coworker of the victim testified that the victim had owned the box cutter in question.

¶ 12        A forensic pathologist testified that the victim died from slash wounds to her neck. The fatal wound was 10½ inches long and 4 inches deep. There were also abrasions on her cheek and contusions on her lip and the back of her head. There were cuts on the victim's shoulder, scrapes on her elbows, bruises on her hands, and scrapes on the back of her body. The State showed the forensic pathologist a photograph of the box cutter that had belonged to the victim. The forensic pathologist said that it was possible for this knife to cause all of the victim's wounds, though it was not typically the kind of knife that would cause a wound as deep as the wound on the victim's neck. The State also showed the forensic pathologist a folding knife recovered from defendant's person at the time of his arrest. The forensic pathologist said that this knife could have caused the victim's wounds, but it was unlikely. The folding knife had a serrated edge, and no serration patterns were present on the victim's body. The forensic pathologist opined that neither knife was the likely cause of the victim's fatal injury.

¶ 13        Rosaliyn testified that, approximately one month before the victim's death, she woke up and heard defendant and the victim arguing. She went downstairs and saw the victim on the living room floor. Defendant was dragging the victim outside by the arms. Rosaliyn told defendant to let go of the victim, and he released her. Rosaliyn observed scrapes on the victim's knees. Rosaliyn was 12 years old at the time of that incident.

¶ 14        Peters testified that, approximately six months before the victim's death, he had been out drinking with defendant and the victim. Defendant took out a pocketknife to clean his fingernails.

Peters said that his son collected knives, and defendant handed the knife to Peters. Peters closed the knife and returned it to defendant. Approximately five minutes later, defendant stood up and put the knife in his pocket. He looked at the victim and said, "[I]f I can't have you nobody will."

¶ 15    During the State's closing argument, the prosecutor argued that the offense was a crime of passion. The prosecutor noted Jackson's testimony that defendant told the victim on the night of the incident, "If you don't want me just let me know." The prosecutor also noted Peters's testimony that defendant had said on a prior occasion that if he could not have the victim, no one would. The prosecutor argued: "And I believe that's at the crux of this case, ladies and gentlemen, as we have to delve into the mind of a man for basically all intents and purpose [*sic*] committed overkill with the injuries to [the victim]." The prosecutor then discussed the numerous injuries that were found on the victim's body.

¶ 16    After closing arguments, the court instructed the jury. One of the instructions given to the jury stated that evidence had been admitted concerning defendant's involvement in "conduct other than that charged in the indictment." The instruction said that this evidence had been received on the issues of defendant's identification, intent, and motive, and it could only be considered for that limited purpose.

¶ 17    The jury found defendant guilty of first degree murder, and the court sentenced him to 50 years' imprisonment.

¶ 18    On direct appeal, defendant argued that the trial evidence was insufficient to prove him guilty beyond a reasonable doubt and that the circuit court erred in failing to comply with Illinois Supreme Court Rule 431(b) (eff. May 1, 2007). This court ultimately affirmed the judgment of the circuit court. *Russell*, 409 Ill. App. 3d at 396.

¶ 19    On August 1, 2011, defendant filed a postconviction petition as a self-represented litigant. The petition alleged, *inter alia*, that defendant's right to due process was violated by the improper introduction of evidence of other crimes and bad acts. Defendant specifically noted the testimony of Rosaliyn and Peters.

¶ 20    The circuit court advanced the petition to the second stage of postconviction proceedings and appointed counsel to represent defendant. After approximately two years of continuances, postconviction counsel filed a certificate of compliance with Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013) but did not file an amended petition. The State filed a motion to dismiss the petition, which the circuit court granted. The court reasoned that defendant waived his claim that evidence of other crimes and bad acts was improperly admitted at his trial because he failed to raise the claim on direct appeal.

¶ 21    On appeal, we reversed the dismissal of the postconviction petition and remanded the matter for new second-stage proceedings with the assistance of new counsel. *People v. Russell*, 2016 IL App (3d) 140386, ¶¶ 12-14. We held that defendant's postconviction counsel was ineffective for failing to amend the postconviction petition to assert a claim of ineffective assistance of appellate counsel with regard to his claim that evidence of prior bad acts was improperly admitted. *Id.* ¶ 11.

¶ 22    On remand, the court appointed new counsel to represent defendant. Counsel filed a supplemental postconviction petition, which did not include a claim of ineffective assistance of appellate counsel. The State filed a motion to dismiss, which addressed the ineffective assistance of appellate counsel claim discussed in defendant's appeal from the prior dismissal of his postconviction petition. Postconviction counsel retired from the practice of law, and the court appointed a new attorney to represent defendant. This attorney filed a second supplemental

postconviction petition containing a claim that appellate counsel was ineffective for failing to argue that that the circuit court erred in admitting evidence of other crimes and bad acts at defendant's trial. The circuit court granted the State's motion to dismiss, and this appeal followed.

¶ 23                                   II. ANALYSIS

¶ 24        Defendant argues that the circuit court erred in dismissing his postconviction petition at the second stage of postconviction proceedings because he made a substantial showing of a claim of ineffective assistance of appellate counsel. Specifically, defendant argues that his appellate counsel was ineffective for failing to argue that the circuit court erred in admitting evidence of other crimes and bad acts—namely, the testimony of Rosaliyn and Peters. Defendant contends that he was prejudiced by appellate counsel's failure to raise this issue because it was meritorious and there is a reasonable probability that the appellate court would have reversed his conviction and granted him a new trial if the issue had been raised. We find that defendant has not made a substantial showing of a claim of ineffective assistance of appellate counsel because it is not reasonably probable that his direct appeal would have been successful if appellate counsel had raised the issue.

¶ 25        Under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)) persons imprisoned in the penitentiary may file petitions challenging their convictions on grounds of constitutional violations. When, as in the instant case, a petition is advanced to the second stage of postconviction proceedings, the petitioner must make a substantial showing of a constitutional violation in order to survive a motion to dismiss. *People v. Domagala*, 2013 IL 113688, ¶ 34. This "substantial showing" is a measure of the legal sufficiency of the petition. *Id.* ¶ 35.

¶ 26        To establish a claim of ineffective assistance of appellate counsel, a defendant must show that (1) "appellate counsel's performance fell below an objective standard of reasonableness" and

7

(2) "this substandard performance caused prejudice, *i.e.*, there is a reasonable probability that, but for appellate counsel's errors, the appeal would have been successful." *People v. Golden*, 229 Ill. 2d 277, 283 (2008). "Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong." *People v. Easley*, 192 Ill. 2d 307, 329 (2000). "[U]nless the underlying issues are meritorious, defendant has suffered no prejudice from counsel's failure to raise them on appeal." *Id.*

¶ 27     Evidence of other crimes and bad acts is not admissible for the purpose of showing a defendant's propensity to commit crimes. *People v. Illgen*, 145 Ill. 2d 353, 364 (1991). However, such evidence is admissible, when relevant, to prove *modus operandi*, intent, identity, motive or absence of mistake. *Id.* "When evidence of other crimes is offered, the trial judge must weigh its probative value against its prejudicial effect [citation], and may exclude the evidence if its prejudicial effect substantially outweighs its probative value." *Id.* at 365. The admissibility of such evidence is a matter within the sound discretion of the circuit court. *Id.* at 364.

¶ 28     Here, Rosaliyn's and Peters's testimony was relevant to show defendant's motive to kill the victim. See *People v. Rush*, 294 Ill. App. 3d 334, 341 (1998) ("Evidence that tends to establish that the accused had a motive for killing the victim is relevant, and if the evidence, at least to a slight degree, tends to establish the motive relied on, it is also competent."). We find our supreme court's decision in *Illgen*, 145 Ill. 2d 353 to be instructive on this point. In *Illgen*, the court held that evidence of the defendant's prior physical assaults on the victim throughout their marriage was relevant, among other reasons, to show motive—specifically, "a hostility showing [the defendant] likely to do further violence." *Id.* at 367. The *Illgen* court held that this evidence "was

8

relevant to show their antagonistic relationship and, thus tended to establish the defendant's motive to kill her." *Id.*

¶ 29    In the instant case, like in *Illgen*, the challenged evidence was relevant to show the antagonistic relationship between defendant and the victim and to establish defendant's motive to kill her. The State's theory was that the murder was a crime of passion and that defendant killed the victim due to problems in their romantic relationship. Peters's testimony that, approximately six months prior to the murder, defendant said that if he could not have the victim, no one would, was relevant to support this theory. Rosaliyn testified that, approximately one month before the murder, she observed defendant attempting to drag the victim out the door of her residence after they had been arguing. Rosaliyn's testimony described a prior act of violence defendant committed against the victim and, accordingly, was relevant to show motive. See *People v. Ross*, 2018 IL App (2d) 161079, ¶ 173 ("[I]t 'is well established' that 'prior assaults against a victim of a crime that a defendant is charged with committing is probative of intent or motive.' " (quoting *People v. Abraham*, 324 Ill. App. 3d 26, 35 (2001))).

¶ 30    The incidents described by Peters and Rosaliyn, which concerned defendant's prior violent and jealous behavior toward the victim, were especially relevant to the State's theory of motive given Jackson's testimony that defendant and the victim had "a little altercation" in a bar on the night of the murder. Jackson's testimony indicated that there were also problems in defendant's and the victim's relationship shortly before the murder.

¶ 31    Having found that the challenged evidence was relevant to show motive, we also find that the circuit court was within its discretion in not excluding the evidence on the basis that its probative value was substantially outweighed by its prejudicial effect. In the instant case, as in *Illgen*, 145 Ill. 2d at 375-76, "reasonable minds could differ" concerning the admissibility of the

9

challenged evidence. However, like in *Illgen*, "we cannot say as a matter of law that the probative value of the prior-act evidence was substantially outweighed by the danger of unfair prejudice." *Id.* The circuit court did not abuse its discretion in determining that the evidence was admissible.

¶ 32　　　　We reject defendant's argument that the probative value of Peters's testimony was substantially outweighed by its prejudicial effect. Specifically, defendant contends that Peters's testimony concerning the pocketknife was not relevant and had no probative value. Defendant also argues that this testimony was extremely prejudicial because the victim's cause of death was multiple stab wounds, and it implied that the pocketknife could have been the murder weapon. However, the testimony about the pocketknife was relevant in that it gave context to defendant's statement that if he could not have the victim, no one would. Also, the prejudicial effect of this evidence was lessened by the fact that other evidence tended to show that a box cutter belonging to the victim caused at least some, and possibly all, of the victim's injuries. Additionally, a forensic pathologist testified that a folding knife recovered from defendant's person at the time of his arrest was not likely to be the murder weapon, though it was not established that this was necessarily the same knife defendant had during the incident Peters described. The circuit court was within its discretion in admitting Peters's testimony.

¶ 33　　　　Because the circuit court did not abuse its discretion in admitting Rosaliyn's and Peters's testimony concerning prior bad acts, it is not reasonably probable that defendant's direct appeal would have been successful if this argument had been raised. Accordingly, appellate counsel was not ineffective for failing to raise the issue, and defendant has failed to make a substantial showing of a claim of ineffective assistance of appellate counsel.

¶ 34　　　　　　　　　　　　　　III. CONCLUSION

¶ 35　　　　The judgment of the circuit court of Peoria County is affirmed.

¶ 36        Affirmed.