2024 IL App (1st) 220747-U

SECOND DIVISION
March 12, 2024

No. 1-22-0747

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

|  |  |  |
|---|---|---|
| DERRICK MARTIN, | ) | Appeal from the |
|  | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
|  | ) |  |
| v. | ) | 18 L 5964 |
|  | ) |  |
| CITY OF CHICAGO, | ) | Honorable |
|  | ) | Janet Brosnahan, |
| Defendant-Appellee. | ) | Judge Presiding |
|  | ) |  |

_____

JUSTICE ELLIS delivered the judgment of the court.
Justices McBride and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirmed. Trial court did not err in admitting evidence of plaintiff's previous arrests. Court did not abuse its discretion in permitting defendant to reference this court's prior opinion from plaintiff's criminal case at trial.

¶ 2    About a decade ago, police arrested plaintiff, Derrick Martin, after they suspected he was selling drugs out of his mother's Chicago home. He was convicted of possession of drugs and sentenced to five years in prison, but a different panel of this court overturned his conviction after finding a fourth-amendment violation, as the police conducted a warrantless search of the home in discovering the drugs. See *People v. Martin*, 2017 IL App (1st) 143255, ¶ 40.

¶ 3    Freed from his conviction and sentence, Martin sued the officers and the City of Chicago (the City), alleging malicious prosecution. A jury returned a verdict in favor of the City.

¶ 4    On appeal, Martin claims the trial court made two key evidentiary errors: (1) failing to conduct an evidentiary balancing test before allowing the City to confront him with five prior drug arrests, and (2) allowing the City to inform the jury that this Court's previous decision indicated that the police had probable cause to suspect Martin of criminal conduct at the time of the search. We disagree on both grounds and affirm.

¶ 5                                              BACKGROUND

¶ 6    We take the facts both from the record and this court's previous opinion in Martin's criminal matter. See *id*. Because Martin was the defendant in the criminal action and is the plaintiff here, to avoid confusion we will forgo those monikers and refer to him by his last name.

¶ 7    On June 9, 2013, Chicago police officers Bernardo Manjarrez and Angel Collazo were conducting surveillance at the corner of Fulton Street and Laramie Avenue on Chicago's west side. The officers saw Martin standing in front of a two-flat apartment building on Fulton Street. While watching the area, the officers saw Martin participate in what they believed was a drug sale: After receiving a signal from a man on the street, Martin went into the two-flat's vestibule, reached above the inner doorframe, and pulled down a blue plastic bag. He retrieved something from that bag, which he gave to another person in exchange for cash.

¶ 8    Manjarrez and Collazo stopped one of the people who made a purchase from Martin and recovered a small, red-tinted plastic bag with "blow" in it. The bag had a bomb logo on it, with the phrase "stay high" printed on the side.

¶ 9    The officers returned to the house on Fulton, saw Martin outside, and arrested him. About the same time, two other officers, Nathaniel Warner and Hardik Suthar, arrived on scene.

Manjarrez directed Warner to the house and doorframe where Martin had stored the blue bag. Warner went into the building's vestibule and found it. Inside the bag were several smaller red plastic bags with a bomb logo and "stay high" printed on the side. Inside those bags were a white powder. Based on that discovery, Manjarrez arrested Martin for suspicion of possession of a controlled substance with intent to deliver and delivery of a controlled substance. The police did not have a warrant to enter the building.

¶ 10    In his criminal case, Martin challenged the search of the vestibule on fourth-amendment grounds. At the hearing on the motion, his mother, Perlene West, testified that she owned the two-flat where the blue bag was discovered. She lived on the first floor; nobody lived upstairs. Martin sometimes stayed at the building and had stayed overnight on June 8, 2013. West testified that the building was her home, that nobody could just walk into the vestibule area, and that when police searched it on June 9, she did not give them permission to enter the vestibule.

¶ 11    The trial court denied the motion to suppress and convicted him of possession of a controlled substance.

¶ 12    On appeal, this court held that the building was a home for fourth-amendment purposes, as it was a single-family dwelling, and the vestibule was part of the home. Thus, a search of the home, absent exigent circumstances or homeowner consent, required a warrant that the police lacked. *Id*. ¶¶ 27-32. Because the fruits of the search were subject to suppression and there was no other evidence of guilt, the court reversed the conviction outright. *Id*. ¶ 40.

¶ 13    Notably for purposes of this appeal, though this court determined that no exigent circumstances existed, the court "acknowledge[d] that the crime under investigation was recently committed, the entry was peaceable, and *there was probable cause to believe that [Martin] committed a crime and that evidence was in the home*." (Emphasis added.) *Id*. ¶ 35.

¶ 14    Martin then sued the officers and the City in the circuit court, alleging malicious prosecution. Before trial, the parties filed several evidentiary motions. Relevant here, Martin moved to bar any evidence of his prior arrests or other bad acts that did not lead to a conviction. The City countered by asking to admit six of Martin's prior drug-related arrests to establish his "identity, opportunity, and knowledge." The court ruled that the City would be allowed to introduce evidence of five of the six arrests, excluding the final one as unnecessarily cumulative.

¶ 15    This court's opinion in Martin's underlying criminal matter also became a point of contention. Martin sought to prevent the City from telling the jurors about this court's finding that there was probable cause that he had committed a crime. Martin, however, did believe that part of the opinion could be judicially noticed and admitted at trial: the fact that his conviction had been reversed and his fourth-amendment rights violated. The City, for its part, said it would seek to introduce this court's probable-cause statement only if Martin told the jury that this Court held that the police violated the fourth amendment in searching the house.

¶ 16    The trial court took judicial notice of the opinion. The court ruled that Martin could inform the jury that, in the opinion of the appellate court, the police violated his fourth-amendment rights. But the City would then (and only then) be permitted to introduce the passage acknowledging that the police had probable cause to believe that Martin had committed a crime.

¶ 17    During his opening statement, Martin told jurors about this Court's holding that the police officers had violated his rights. In its opening statement, the City told the jurors that the appellate court had also "acknowledged there was probable cause to believe [Martin] committed a crime." Martin also referred to this Court's opinion multiple times when questioning the officers in his case-in-chief. Attorneys for the City then brought up the opinion's reference to probable cause when they questioned the officers.

¶ 18    At the close of trial, the court instructed the jury that "evidence concerning [Martin's] prior arrests is to be considered by you solely as it relates to the Martin's potential identity, opportunity, and knowledge. It should not be used by you for any other purpose." The court also told the jurors that the "Illinois Appellate Court's determination regarding whether probable cause existed is not dispositive or binding on you," and "[y]ou are to make your own assessment regarding whether probable cause existed based on the evidence ***."

¶ 19    The jury found in favor of the City. This appeal followed.

¶ 20                                ANALYSIS

¶ 21    Martin challenges two of the trial court's evidentiary decisions, one involving his prior arrests for drug-related offenses, the other involving this court's opinion in his criminal case. Evidentiary rulings are within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *People v. Caffey*, 205 Ill. 2d 52, 89 (2001). A court abuses its discretion when it acts arbitrarily or unreasonably. *People v. Illgen*, 145 Ill. 2d 353, 364 (1991).

¶ 22                        I. Evidence of Drug-Related Arrests

¶ 23    Before trial, the City moved to admit evidence of six of Martin's previous arrests as evidence of his "identity, opportunity, and knowledge" in selling drugs under Illinois Rule of Evidence 404(b) (eff. Jan. 1, 2011), which permits the use of evidence of "other crimes, wrongs, or acts" for the limited use to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Of course, there is also Illinois Rule of Evidence 403 (eff. Jan 1, 2011), which provides for the exclusion of relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

¶ 24    The court ultimately allowed defendant to use five of the six arrests to prove identity, opportunity, or knowledge because Martin was "putting forth evidence that the person who was dealing drugs on the day of the incident was not him." The court excluded one arrest as unnecessarily cumulative.

¶ 25    Though Martin challenges this evidentiary ruling, he emphasizes that he is not challenging the court's balancing of Rule 403 interests but, rather, is claiming the court did not conduct the balancing test at all. The question, he insists, is "not whether the evidence was probative of an issue in the case, nor is the premise whether the probative value was outweighed by its unfairly prejudicial effect." Rather, the "entire premise" of his argument on this issue is "that the Trial Court did not conduct a meaningful balancing test in the first instance."

¶ 26    As Martin notes, while the balancing of the Rule 403 factors is within the court's discretion, the failure to conduct that balancing test at all is an error of law and necessarily an abuse of discretion. See *Carlson v. Jerousek*, 2016 IL App (2d) 151248, ¶ 69. Unfortunately for Martin, this case does not present such an example.

¶ 27    In ruling on the pretrial motion, the court first identified the issue with reference, among other rules, to Rule 403 specifically: "whether or not I should allow introduction of evidence pursuant to Illinois Rule of Evidence 404 and 403 of Martin's prior arrests or other bad acts, and specifically, the City is seeking to admit evidence of one conviction and five arrests."

¶ 28    The court then stated:

> "I've been asked to allow six incidents. Each one of the incidents, I believe,
> serves a purpose of proving identity, opportunity, and knowledge *** However, *I also*
> *considered whether or not the City's gone overboard* by seeking to introduce six
> incidents as opposed to fewer than six. And so I compared and contrast each incident to

see which one, according to the facts put forth by the city, adds some facts that are helpful for the purposes articulated that maybe are not present in another incident because *I don't want this evidence to be cumulative, and I don't want the City to put in so much that it turns into propensity evidence.* And what I decided was, that there's a separate reason to allow five of these requested six incidents, but two of them are very close in time to one another and have apparently, have facts that are almost identical, [and] should not both be allowed." (Emphases added.)

¶ 29 The court explicitly identified three concerns—the sheer number of arrests, their cumulative nature, and the risk of the jury drawing the forbidden propensity inference—that are directly implicated by Rule 403. See Ill. R. Evid. 403 (eff. Jan 1, 2011) (court must consider, among other things, "danger of unfair prejudice *** considerations of undue delay, waste of time, or needless presentation of cumulative evidence"). Though the court did not explicitly utter the word "prejudice," the obvious concern with the admission of other-acts evidence is the risk that the jury will consider it for propensity—the notion that, because Martin committed those other acts, it is more likely that he committed the act in question here. See, *e.g.*, *People v. Mujkovic*, 2022 IL App (1st) 200717, ¶ 13. Indeed, that was Martin's principal objection to the admission of this evidence.

¶ 30 And if any further proof were needed, the court excluded one of the six previous arrests because it was too similar—cumulative—to another arrest. In word and deed, the court conducted the required Rule 403 balancing. We find no abuse of discretion.

¶ 31                II. Admission of Appellate Opinion Passage

¶ 32 Next, Martin complains that the court should not have allowed the jury to learn of the passage in the *Martin* appellate opinion in which this court indicated that the police officers had

probable cause to believe that Martin had performed a drug sale, and that drugs were inside the house. He claims that the court should not have taken judicial notice of the opinion, did not conduct a Rule 403 balancing test before allowing defendant to use it, and abused its discretion when it allowed the City to use an inadmissible legal conclusion to sway the jury.

¶ 33    Martin's complaint about the court's judicial notice of the opinion is puzzling, as it was Martin, not the City, who first introduced the opinion and its holding that the police violated his fourth-amendment rights. The City made clear from the outset that it had no intention of referencing the opinion except in direct response to Martin's references to it. Martin can hardly complain about the admissibility of evidence that he introduced first.

¶ 34    In any event, there is no question that a court may judicially notice an opinion of another court, as such decisions are readily verifiable and are capable of instant and unquestionable demonstration. *Bank of America, N.A. v. Kulesza*, 2014 IL App (1st) 132075, ¶ 21; *Hermesdorf v. Wu*, 372 Ill. App 3d 842, 850 (2007); see *People v. Davis*, 65 Ill. 2d 157, 164 (1976); Ill. R. Evid. 201(b) (eff. Jan. 1, 2011). Judicial notice merely relieves the party of providing the foundation for admissibility that would otherwise be required, for the simple reason that its existence and authenticity is subject to easy verification. That is why judicial notice is a rule of *evidence*. See Ill. R. Evid. 201(b) (eff. Jan. 1, 2011).

¶ 35    Nor is there any merit to the notion that the court failed to conduct the appropriate Rule 403 balancing test or otherwise erred in allowing the City to introduce the passage regarding the police officers' probable cause. After a lengthy discussion of the matter, the court struck a fair balance of only allowing the jury to hear of the probable-cause passage *if* Martin chose to put the opinion at issue in the first instance by referencing the appellate court's holding.

¶ 36    It would seem only fair that if Martin were to use the opinion's holding of a fourth-

amendment violation to criticize the officers' conduct, the rule of completeness would entitle the City to fill in the picture with the caveat that the search of the residence was at least supported by probable cause. See Ill. R. Evid. 106 (eff. Jan. 1, 2011) ("When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.").

¶ 37    To that we would add that the court allowed the submission of a non-IPI instruction proffered by Martin, explaining that the appellate court's statement on probable cause was "not dispositive or binding on you," and the jury should make its "own assessment *** based on the evidence presented to you in this proceeding." The result was that each side was given the opportunity to use the opinion to bolster its view of the officers' conduct with a careful instruction that would prevent the jury from giving preclusive effect to the court's discussion of probable cause.

¶ 38    Given the careful balance the court struck, we could not possibly find an abuse of discretion in its ruling here.

¶ 39                              CONCLUSION

¶ 40    The judgment of the circuit court is affirmed.

¶ 41    Affirmed.