THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERIC JAMES ILLGEN, Defendant-Appellant.

Third District    No. 3—89—0768

Opinion filed October 23, 1990.

HEIPLE, P.J., dissenting.

Mark D. Fisher, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Burmila, State's Attorney, of Joliet (Nancy Rink Carter, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

Following a jury trial, the defendant, Eric Illgen, was convicted of murdering his wife, Linda Illgen. The trial court sentenced the defendant to 30 years' imprisonment. The defendant appeals.

The incident that gave rise to the murder charge against the defendant took place on April 14, 1989. Sally and Lisa Illgen, Eric

and Linda's children, testified for the State. Sally and Lisa testified that on the evening of April 14, 1989, they watched a movie on television with their parents. At some point during the evening, their mother told them to play in a back room of the house because their father, the defendant, had a loaded gun. The children played in a back room until their mother asked them to come back into the living room. As they walked towards the living room, they heard a gunshot. When they entered the living room, they saw their now bleeding mother slumped on the couch. Sally testified that she saw her father holding a gun and standing in front of her mother. She heard him say that it was an accident. Lisa testified that her father said "Oh my God, Linda," and put the gun on the kitchen table.

The children further agreed that their parents had not argued on the night of the incident. Sally also stated that her father often played with guns and their mother always ushered them out of the room whenever he had a loaded gun.

Bolingbrook police detective Joseph Andalina testified that he went to the Illgen home at about 9 p.m. to investigate the scene. When he arrived, he found the defendant sobbing. When asked what happened, the defendant stated that "Lester was here." It was later determined that the defendant's father was named Lester. The defendant asked Andalina to shoot him. When asked whether the shooting was an accident, the defendant stated "these things are never an accident." The defendant was subsequently taken to the police station, where he was questioned further by Andalina and another police officer. The defendant told the officers that he had been cleaning his gun while sitting on the couch and that his wife had been sitting to his left on the couch watching television. At some point, he heard the gun discharge and saw blood on his wife's face. The defendant wished he knew what happened "because these things are never accidents." Andalina further testified that during the interrogation, the defendant made bizarre, irrational statements, and at other times, gave responsive answers.

Over defense counsel's objections, Carol Svarz testified that she had known Linda and the defendant since 1970 and 1969, respectively. Svarz testified as to several incidents in which the defendant physically abused his wife. These incidents purportedly occurred between 1972 and 1989. In particular, Svarz testified that Linda enrolled in the Glen Ellyn Abuse Center for Women for six months in January 1982. In October 1982, after Linda and the defendant had reconciled, the defendant purportedly told Linda that he would kill himself, Linda, and the children if she ever left him again.

The defendant testified that on the night his wife was killed, he watched a movie, drank vodka and soda and cleaned his gun. The gun was not pointed at his wife while they were seated on the couch. The defendant stated that he remembered hearing a loud noise like a boom. He could otherwise not remember what happened or how the shooting occurred. The defendant also averred that he did not remember making any statements to the police.

We initially address the defendant's contention that he was denied his right to a fair trial when the trial court allowed Svarz to testify to prior incidents of physical abuse purportedly inflicted upon Linda by the defendant. The defendant asserts that the incidents were too remote in time to have any relevance to the defendant's state of mind on the night of the shooting and that the testimony was extremely prejudicial.

It is well settled that evidence of offenses other than those for which a defendant is being tried is not admissible if relevant merely to establish the defendant's propensity to commit a crime. (*People v. McKibbins* (1983), 96 Ill. 2d 176, 449 N.E.2d 821.) In the instant case, the State contends that the applicable exception to this rule is where the evidence is relevant to the main issue and tends to prove the defendant's motive or intent. See *People v. Groleau* (1987), 156 Ill. App. 3d 742, 509 N.E.2d 1337.

In *People v. Durso* (1968), 40 Ill. 2d 242, 239 N.E.2d 842, evidence of the defendant's sales, possession, and use of narcotics was held admissible to explain his motive for killing the victim, who had failed to account for proceeds of drug sales and who was suspected of being an informant. In *Durso*, the evidence of other crimes tended to explain why the victim was killed. In the instant case, however, the defendant's prior physical abuse of his wife did not explain her death. This past physical abuse did not give the defendant a reason to kill his wife. This other crimes evidence merely portrayed the defendant as a person who acts violently towards his wife.

The State also argues that Svarz's testimony also explains the defendant's intent in killing his wife. We find no merit in this argument. The incidents related by Svarz occurred seven years prior to this incident. No evidence was adduced that Linda was planning to leave the defendant nor was any evidence adduced that Linda's death was the result of a quarrel that had gotten out of hand. Therefore, because the evidence failed to establish motive or intent, we conclude that the trial court committed error by allowing Svarz's testimony into evidence.

Further, we hold that this error was not harmless. It is our

opinion that the substantial prejudicial impact of this testimony on the jury outweighed any possible probative value it may have had. (See *People v. Mitchell* (1984), 129 Ill. App. 3d 189, 472 N.E.2d 114.) The instant case centered on the credibility of the defendant's testimony. The record shows that Svarz's testimony, without question, influenced the jurors. During deliberations, the jury requested the transcript of Svarz's testimony and asked for the dates of the incidents of abuse about which she testified. When questioned, the jury foreman specifically asked for the date on which the defendant threatened to kill himself, Linda, and the children. Accordingly, we find Svarz's testimony to be extremely prejudicial.

The defendant next asserts that the evidence in the instant case was insufficient to prove him guilty beyond a reasonable doubt. We disagree.

A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671.) The relevant question for this court to address is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) We find that a rational trier of fact could infer from the admissible evidence adduced that the defendant committed murder in the instant case.

For these reasons, we reverse the judgment of the circuit court of Will County and remand this case for a new trial consistent with this opinion.

*Reversed and remanded.*

SCOTT, J., concurs.

PRESIDING JUSTICE HEIPLE, dissenting:

Defendant, Eric James Illgen, was charged with first degree murder in connection with the shooting death of his wife, Linda, on April 14, 1989. Following a jury trial, defendant was found guilty and sentenced to 30 years in prison. The trial court subsequently denied defendant's motion for a new trial. Defendant appeals.

At trial, defendant's daughters, Lisa and Sally, testified that on the afternoon of April 14, 1989, they arrived home from school as usual. Their father came home from work between 4 and 5 p.m. The family ate dinner together and then watched a movie in the living

room. Later, the girls' mother, Linda, told them to go play in the back of the house because defendant had his loaded gun out. The girls obeyed and played in another part of the house until they heard their mother call them into the living room. As they approached the living room, the girls heard a single shot, then saw their mother sitting on the couch bleeding and their father holding the gun. Both girls testified that their father said, "Oh my God, Linda," and put the gun down on the kitchen table. Sally testified that defendant often played with guns and their mother always had them leave the room when he did so.

Defendant testified that he was cleaning and working the gun mechanism while drinking and watching television with his wife. He then testified that he remembered nothing else until he heard a shot and realized his wife had been shot. He denied any intention of killing his wife.

Finally, the jury heard the testimony of Carol Svarz over the objection of the defense. Svarz, an acquaintance of defendant and the victim for many years, testified that defendant had physically abused his wife several times from 1972 to 1989 and that she had sought refuge at a women's shelter. Svarz further testified that defendant had threatened to kill himself if his wife left him and had mentioned killing his wife and pleading insanity.

Following presentation of the foregoing evidence, the jury found defendant guilty of first degree murder. Defendant moved for a new trial, contending that he was denied his right to a fair trial when the trial court allowed Svarz to testify to incidents of alleged physical abuse inflicted upon the victim by defendant. Specifically, defendant asserted that the events were too remote in time to have any relevance to defendant's state of mind and that the testimony was highly prejudicial. The trial court denied defendant's motion, remarking that in the case of an alleged homicide involving a husband and wife, "the conduct of the parties themselves and the treatment of one by the other is a relevant consideration." The majority reverses the trial court decision, stating that Svarz's testimony failed to establish motive or intent and was therefore erroneously allowed into evidence. I disagree.

While evidence of other acts of misconduct committed by a defendant is not generally admissible as proof of the defendant's propensity to commit crime, it is well established that evidence of a defendant's prior misconduct may be admitted if offered for a purpose other than to show the defendant's propensity to commit crime. (*People v. McCarthy* (1989), 132 Ill. 2d 331.) Evidence of a defendant's

prior acts of violence toward a victim has been deemed admissible as proof of the defendant's intent at the time of the commission of the offense. (*People v. Manzella* (1973), 56 Ill. 2d 187, 306 N.E.2d 16.) In the instant case, defendant's intent or state of mind when he shot his wife was at issue. Svarz's testimony regarding defendant's prior acts of violence toward his wife established a history of abusive acts throughout the marriage and tends to show defendant's intent to harm her.

With respect to defendant's contentions that the incidents Svarz testified to were too remote in time to have any relevance, it is well settled that the issue of remoteness is a question which goes to the weight of the evidence and not its admissibility. (*People v. Barber* (1983), 116 Ill. App. 3d 767, 452 N.E.2d 558.) The probative value of such evidence is weighted against its prejudicial effect and the trial judge's decision to admit such evidence will not be overturned absent an abuse of that discretion. (*People v. Whitehead* (1988), 171 Ill. App. 3d 900, 525 N.E.2d 1084.) The pattern of abuse described by Svarz is of significant probative value. There is no indication that the trial court abused its discretion in determining that the probative value outweighed any prejudicial effect of the testimony. Additionally, the jury in this case was instructed that the evidence regarding other occurrences could be considered for the sole and limited purpose of establishing defendant's intent, substantially reducing any prejudicial impact which may have resulted by virtue of the admission of other acts of evidence. *People v. Wolfbrandt* (1984), 127 Ill. App. 3d 836, 467 N.E.2d 1134.

The majority also concludes that defendant's additional argument that the evidence in the case is insufficient to prove him guilty beyond a reasonable doubt is without merit. With that much I agree. However, reversal and remand of this matter for new trial is inappropriate. I would affirm the trial court in this case.