THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID LEE, Defendant-Appellant.

First District (5th Division)   No. 1—99—2626

Opinion filed March 29, 2002.—Rehearings denied December 13, 2002, and December 20, 2002.

Michael J. Pelletier and Michael H. Orenstein, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Margaret J. Campos, and Sanju D. Oommen, Assistant State's Attorneys, of counsel), for the People.

JUSTICE REID delivered the opinion of the court:

Following a jury trial, the defendant, David Lee, was found guilty of first-degree murder (720 ILCS 5/9—1(a) (West 1992)) and sentenced to 22 years' imprisonment. On appeal, Lee asserts that the trial court erred when it: (1) denied his motion to suppress, and (2) admitted the prior inconsistent statement and prior testimony from another case of Terrell Richardson, who was not available to testify at this trial, as substantive evidence. For the reasons that follow, we reverse the decision of the trial court and remand this matter for a new trial.

## OVERVIEW

The victim, Thomas Abraham, was killed during a drive-by shoot-

ing. Allegedly, there were three people in the vehicle who committed the drive-by. Lee was supposedly sitting in the rear passenger seat during the commission of the crime.

## THE FACTS

### The Motion To Suppress Hearing

On February 8, 1998, Lee filed a motion to quash his arrest and suppress the resulting evidence including his statement. In the motion, Lee, a minor, alleged that he was not advised of his *Miranda* rights prior to being interrogated, that his mother, Helen Lee (Mrs. Lee), was present at the police station but was not allowed to be present during Lee's initial interrogations, that his statement was procured as a result of physical and mental coercion, and that he was unable to waive his *Miranda* rights because he was incapable of understanding the *Miranda* warning when it was finally given.

Detective John Murray testified that on January 6, 1997, at approximately 10:45 p.m. he arrested Lee and brought him to Area 1 headquarters (Area 1). After picking Lee up, Murray telephoned the defendant's mother and explained to Mrs. Lee that her son was involved in a homicide investigation and requested that she come to Area 1, which is located at 51st Street and Wentworth Avenue in Chicago, Illinois. Murray told Mrs. Lee that his office was on the second floor, but he did not tell her to come up the steps. The Second District police station is located on the first floor at 51st and Wentworth, and Area 1 is located on the second floor of the same building. Murray did not go to see if Mrs. Lee was downstairs before questioning her son. Murray also failed to tell a youth officer that Lee was in custody until approximately 12:30 a.m., when youth officer Torres was called.

After waiting an hour and a half for Mrs. Lee, Murray, his partner, Detective John Halloran, and Torres interrogated Lee. The interrogation began at approximately 12:45 a.m. Murray testified that when the interrogation began, he advised Lee of his *Miranda* rights. Lee indicated that he understood his *Miranda* rights and that he wanted to waive them and answer the detectives' questions. Lee then proceeded to give the police an oral statement.

At approximately 2:30 a.m., after Lee had given the initial inculpatory statement, Murray was notified that Lee's mother was seated in the lobby of the Second District police station. Murray then went downstairs to get Mrs. Lee. Murray explained to her the nature of the investigation and Lee's rights. Mrs. Lee was then allowed to talk to Lee privately for approximately 45 minutes.

Murray testified that he then spoke to Mrs. Lee before continuing

the interrogation. Lee was once again advised of his *Miranda* rights. Both Lee and Mrs. Lee indicated that they understood the *Miranda* warning and the interrogation continued with Mrs. Lee present. At approximately 6:40 a.m., Assistant State's Attorney Kevin Simon took a handwritten statement from Lee wherein Lee confessed to participating in the murder.

The handwritten statement began with a paragraph that explained Lee's *Miranda* rights. It concluded with statements such as: Lee had been treated well by the police, Lee could read and write English, no threats or promises were made to Lee in exchange for his statement, and Lee read the first typed paragraph. Lee and Mrs. Lee signed every page of the confession.

Mrs. Lee testified that on the night of January 6, 1997, she received a telephone call from the police and was informed that she should come to the police station because her son was there. She informed the officer that she "would be right there." She immediately dressed and went to the police station. At the police station, the officers on the first floor were unable to locate Lee, and Mrs. Lee waited approximately an hour before she was able to see her son.

Mrs. Lee also testified that neither she nor Lee read the handwritten statement before signing it. The following exchange occurred during Mrs. Lee's testimony:

"Q. Were you ever given a chance to review the statement before you signed it?

A. I was told that I could read the statement, but I didn't read the statement[.]

Q. Why?

A. Because each sheet came in my hands, the gentleman on this side of me was the [S]tate's [A]ttorney. He say I made a mistake right here, and he takes the paper from my hands and he initialed it, and he put it back. He said here sign this. I signed it. And then once he take another one, and he said there, ma'am, right here. The officer behind me he had signed it. He said he had to sign it.

Q. Are you saying that you weren't given time to read the statement, ma'am?

A. No, I wasn't given a chance to read it, no."

Lee stated that he too did not read the statement before signing it and that he did not understand the statement when it was being read to him. Lee said he signed the statement because he "was under the impression from what the officer told [him] if [he] could sign the papers, [he] would get to go home with [his] mother."

Lee also testified that he was never advised of his *Miranda* rights before he was interrogated. Lee further claimed that he was never

given the opportunity to call his mother although he requested to call her on four separate occasions and that he was not given any advice throughout the night from youth officer Torres. Lee also maintained that he was threatened with physical violence if he did not give a statement.

Sharnette Sims testified that she was an English and geography teacher at McKinley Alternative School. Lee was a student in Sims' class for approximately four months. During that time, she worked regularly with Lee on a one-on-one basis. McKinley accepted students who had been expelled from Chicago public schools. Ninety percent of McKinley's students were special education students. When Lee enrolled in McKinley, in September 1996, test scores reflected that he read at a second-grade level and that his math skills were on par with that of a third grader.

Sims testified that Lee's "comprehension level was very low" and that Lee has problems with "identifying words, using them, [and] breaking down symbols." Sims stated that she did not believe Lee could have understood the *Miranda* warning unless it was broken down sentence by sentence. Sims explained that even if the warning was broken down sentence by sentence, Lee would still have difficulty understanding terms such as, "understand," "remain silent," "against," "pre-sentence," "questioning," "afford," "appointed," "represent," "rights," and "statement."

Detective Halloran testified that at no point did Lee indicate that he did not understand what was going on, that Lee was advised of his *Miranda* warnings, and that Lee was never physically threatened. The State also put on Dr. Eugene P. Mele, a forensic clinical psychologist, to rebut Sims' testimony by giving his opinion that Lee was malingering.

On October 21, 1998, the trial court entered an order in which it denied Lee's motion to suppress.

## The Jury Trial

On December 29, 1996, the deceased, Abraham, was standing on a porch located at 5522 South Hoyne Avenue with three young men. At approximately 6 p.m., a dark-colored car pulled up on the street in front of the house where the men were talking and gunshots were fired from its passenger-side windows. Abraham was unable to avoid the gunfire and subsequently died from gunshot wounds he received to his chest and the back of his head. The three men who were on the porch with Abraham were unable to identify Lee as one of the shooters.

At trial, the parties stipulated that a medical examiner identified

Abraham's cause of death as multiple gunshot wounds. A firearms specialist from the Illinois State Police Crime Lab determined that the two gunshot wounds which Abraham sustained were from two different guns.

The State presented three pieces of evidence that linked Lee to Abraham's murder: Lee's inculpatory statement and the prior inconsistent statements of two witnesses, Timothy Powell and Terrell Richardson.

Richardson and Lee were members of the same gang and were also together on the night of the murder. Richardson testified in the severed bench trials of Lee's codefendants, Johnny Milam and Emet Williams. Before the codefendants' trials, Richardson gave the police a statement where he placed Lee in the vehicle used to commit the drive-by shooting. However, at Milam's trial, Richardson gave testimony where he denied the contents of his earlier statement. Richardson was impeached with his earlier statement, which was used as a prior inconsistent statement. During his testimony, Richardson alleged that his prior statement was coerced and not given voluntarily. After Milam's trial, Richardson was murdered and unavailable to testify at Lee's trial.

At Lee's trial, over defense counsel's objection, the trial court admitted Richardson's former testimony given at Milam's trial as substantive evidence. Before admitting Richardson's testimony, the trial court asked Lee's defense counsel if he would have cross-examined Richardson any differently than Milam's defense counsel. Lee's defense counsel conceded that the earlier cross-examination of Richardson during Milam's trial covered all the areas that he would have covered.

At the conclusion of trial, the jury returned a guilty verdict and Lee was sentenced to 22 years' imprisonment. On June 9, 1999, Lee filed a motion for a new trial, which was denied. Lee then timely filed a notice of appeal.

## ANALYSIS

### I

Lee argues that the trial court erred when it denied the motion to suppress his statement because his statement was not given voluntarily. We disagree.

■ " '[I]n reviewing whether respondent's confession was voluntary, we will accord great deference to the trial court's factual findings, and we will reverse those findings only if they are against the manifest weight of the evidence. However, we will review *de novo* the ultimate question of whether the confession was voluntary.' " *People v. Crane*, 195 Ill. 2d 42, 51 (2001), quoting *In re G.O.*, 191 Ill. 2d 37, 50 (2000).

■ "Juvenile defendants are also protected by the privilege against self-incrimination, and the State bears the burden to show by a preponderance of the evidence that a confession was given knowingly and intelligently." *In re J.J.C.*, 294 Ill. App. 3d 227, 234 (1998), citing *In re J.E.*, 285 Ill. App. 3d 965, 974 (1996), citing *People v. Anderson*, 276 Ill. App. 3d 1, 6 (1995). "Procuring an incriminating statement by a juvenile in the absence of counsel requires great care to assure that the juvenile's statement was neither coerced, suggested, nor the product of fright or despair." *In re J.J.C.*, 294 Ill. App. 3d at 234, citing *In re Lashun H.*, 284 Ill. App. 3d 545, 550 (1996), citing *People v. Prude*, 66 Ill. 2d 470, 476 (1977). "In cases involving juveniles, courts must be particularly careful because ' "the coerciveness of a situation is thereby enhanced." ' " *In re J.J.C.*, 294 Ill. App. 3d at 234, quoting *People v. Montanez*, 273 Ill. App. 3d 844, 850 (1995), quoting *People v. Cole*, 168 Ill. App. 3d 172, 179 (1988).

■ "In determining whether a juvenile's confession is voluntary, a court looks to the totality of the circumstances." *People v. Williams*, 324 Ill. App. 3d 419, 428 (2001), citing *In re G.O.*, 191 Ill. 2d at 54; *People v. McNeal*, 298 Ill. App. 3d 379, 390 (1998). "Factors to consider include the age, education, and intelligence of the accused, the duration of questioning, and whether the accused was informed of her or his constitutional rights or was subjected to any physical punishment." *In re J.J.C.*, 294 Ill. App. 3d at 234, citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 36 L. Ed. 2d 854, 862, 93 S. Ct. 2041, 2047 (1973); *People v. Martin*, 102 Ill. 2d 412, 427 (1984). "Other relevant individual aspects include emotional characteristics, previous experience with the criminal justice system, and whether the confession was induced by police deception." *In re J.J.C.*, 294 Ill. App. 3d at 234, citing *People v. MacFarland*, 228 Ill. App. 3d 107, 117 (1992). "Relevant factors pertaining to the nature of the interrogation include whether the defendant was subjected to physical punishment, offers of leniency, other offers or promises to induce a confession, falsely aroused sympathy, prior refusals to answer questions, and whether defendant was informed of her or his constitutional rights." *In re J.J.C.*, 294 Ill. App. 3d at 234, citing *MacFarland*, 228 Ill. App. 3d at 117.

■ Additional factors must be considered, such as the time of day and the presence of a parent or other adult concerned about the juvenile's welfare. *People v. Kolakowski*, 319 Ill. App. 3d 200, 213 (2001), citing *In re J.J.C.*, 294 Ill. App. 3d at 234. " 'The presence or absence of a parent is a factor to consider when determining the voluntariness of a confession; however, there is no *per se* rule that a parent or guardian be present.' " *Kolakowski*, 319 Ill. App. 3d at 213, quoting *In re J.J.C.*, 294 Ill. App. 3d at 235. "However, where they

indicate an interest by their presence, parents should be allowed to confer with their child before, and to be present during, any questioning." *People v. Brown*, 182 Ill. App. 3d 1046, 1053 (1989). "Courts have repeatedly held that police conduct that frustrates a parent's attempts to confer with his child prior to or during questioning is significant in determining the voluntariness of a confession." *In re L.L.*, 295 Ill. App. 3d 594, 601 (1998), citing *In re Lashun*, 284 Ill. App. 3d at 553.

■ "The disposition does not rest on one fact alone; the question must be answered based on the circumstances of each case." *In re J.J.C.*, 294 Ill. App. 3d at 234, citing *Brown v. Illinois*, 422 U.S. 590, 603, 45 L. Ed. 2d 416, 427, 95 S. Ct. 2254, 2261 (1975); *People v. Melock*, 149 Ill. 2d 423, 447-48 (1992). "We note that, in reviewing the trial court's decision, we may consider the entire record, including trial testimony." *In re J.J.C.*, 294 Ill. App. 3d at 234-35, citing *People v. Gilliam*, 172 Ill. 2d 484, 501 (1996), citing *People v. Stewart*, 104 Ill. 2d 463, 480 (1984). "The benchmark for voluntariness is not whether the defendant would have confessed in the absence of interrogation but, rather, whether the defendant's will was overborne at the time of the confession." *People v. Plummer*, 306 Ill. App. 3d 574, 584 (1999), citing *People v. Brown*, 169 Ill. 2d 132, 144 (1996). We must consider the totality of the circumstances. *In re G.O.*, 191 Ill. 2d at 54, citing *Gilliam*, 172 Ill. 2d at 500.

Lee maintains that his statement was not given voluntarily because the police frustrated his attempts to confer with his mother before he gave an inculpatory statement.

In *Plummer*, a juvenile was tried as an adult and was convicted of first-degree murder, attempted first-degree murder, and aggravated battery with a firearm. On appeal the defendant argued that his statement was not voluntary because he was not given an opportunity to confer with his family or an interested adult.

The defendant was initially taken to the police station because he was a witness to a murder. As he waited in the police station, his status changed from witness to a suspect for the commission of a different murder. It was disputed as to how long the defendant spent at the police station, the access the defendant was given to an interested adult when his status changed, if the defendant was physically abused, and the mental capabilities of the minor.

The court found that the police made a "reasonable attempt" to notify the defendant's parents, that the police did in fact notify the defendant's aunt with whom he lived, that the defendant did understand his *Miranda* rights and was able to waive them, that the defendant was malingering and exaggerating the symptoms of mental

illness, and that no evidence of physical or mental coercion was found. The court held that under the totality of the circumstances, the trial court's decision was not against the manifest weight of the evidence. *Plummer*, 306 Ill. App. 3d at 589.

■ In this case, the police did not unreasonably prevent Lee from conferring with his mother. However, the police could have done more to ensure that Mrs. Lee conferred with her son in a more expedited manner. The defendant was picked up by Detective Murray at approximately 10:45 p.m. The defendant's mother was notified immediately and told to come to Area 1. However, Murray failed to explain the exact whereabouts of Area 1 to Mrs. Lee. Murray did not explain to Mrs. Lee that the Second District police station was located on the first floor, and that in order to reach Area 1, she had to go to the second floor of the facility. It was unreasonable for Murray to assume Mrs. Lee would know that she was not in the right place when she arrived at the facility and saw officers on the first floor.

Murray should have explicitly explained to Mrs. Lee that her son was located on the second floor of the facility and that, in order to see him, she needed to come upstairs when she arrived at the facility. He did, however, tell her his office was on the second floor. Murray also failed to inform a youth officer of Lee's presence at the facility until approximately 15 minutes before he was interrogated. Murray's failure to alert a youth officer hampered the officers' efforts downstairs in the Second District to find Lee in a timely fashion for his mother, who was there inquiring about her son.

As Mrs. Lee waited downstairs in the Second District police station, her son was upstairs in an interrogation room giving his first inculpatory statement. A juvenile does not have a *per se* right in Illinois to consult with a parent before questioning. However, where they indicate an interest by their presence, parents should be allowed to confer with their child before, and to be present during, any questioning. "The presence or absence of the parent is a factor in evaluating the voluntariness of a statement or confession under the totality of the circumstances test." *Brown*, 182 Ill. App. 3d at 1053, citing *In re S.D.S.*, 103 Ill. App. 3d 1008 (1982). Although the actions of Murray were wanting, they did not rise to the level of interference that occurred in cases such as *Brown*, *In re L.L.*, and *In re J.J.C.*

When Murray was finally informed that Mrs. Lee was waiting downstairs, he immediately went downstairs and brought Mrs. Lee upstairs where she spent 45 minutes alone with Lee. When the interrogation continued, his mother was present at all times, and when the handwritten statement was completed, she signed it along with Lee.

■ Next, Lee maintains that his statement was not voluntary

because youth officer Torres, although present, did not protect his rights during his interrogation. In Illinois, a youth officer need not be present before or during the questioning of a minor. *Plummer*, 306 Ill. App. 3d at 588, citing *McNeal*, 298 Ill. App. 3d at 391. Here, however, it is undisputed that youth officer Torres was present during Lee's interrogation. The record is silent as to the role that Torres played during the interrogation.

■ Lee asserts that his statement was not voluntary because his learning disability rendered him unable to understand his *Miranda* rights and to make a knowing waiver. To support this proposition, Lee's former teacher, Sims, testified that Lee's reading level prevented him from understanding certain words which are given in the *Miranda* warnings. However, the State rebutted Sims' testimony with that of a forensic clinical psychologist, Dr. Mele. After performing tests with and evaluating Lee, it was Dr. Mele's opinion that Lee was malingering.

■ Lee also claims that the interrogation was conducted at late hours and that he was threatened and intimidated. Detective Murray testified that at no time did he or anyone intimidate or threaten Lee with physical violence. Also, although the interrogation occurred during the early morning hours, we find that this did not play a vital role in Lee giving an inculpatory statement.

■ Taking the totality of the circumstances into consideration, we find that Lee's statement was given voluntarily and that the trial court's decision to deny Lee's motion to quash his arrest and suppress his statement was proper.

## II

Lee also contends that the trial court erred when it admitted Richardson's prior testimony from the Milam trial as substantive evidence. Lee maintains the trial court erred because Richardson was not available for cross-examination during trial as required by section 115—10.1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—10.1 (West 1992)). We agree.

■ "As a general rule, prior consistent statements are made inadmissible by the hearsay rule. [Citation.] However, a court need not make a 'quantitative or mathematical analysis' of whether a witness' entire statement is inconsistent under section 115—10.1 for the entire statement to be admissible. [Citation.] Rather, it is within the sound discretion of the trial court to determine whether or not the testimony is admissible under section 115—10.1. [Citation.]" *People v. Morales*, 281 Ill. App. 3d 695, 701 (1996).

■ The following relevant portions of section 115—10.1 determine the admissibility of prior inconsistent statements:

"In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if

(a) the statement is inconsistent with his testimony at the hearing or trial, and

(b) the witness is subject to cross-examination concerning the statement, and

(c) the statement—

(1) was made under oath at a trial, hearing, or other proceeding[.]" 725 ILCS 5/115—10.1 (West 1992).

The State argues that "the hearing or trial" in section 115—10.1 refers to any hearing or trial. The State cites *People v. Wheatley*, 187 Ill. App. 3d 371 (1989), in support of its position. The State's argument is completely without merit.

In *Wheatley*, the defendant was convicted of armed robbery and unlawful use of a weapon by a felon. The defendant's brother accompanied him during the commission of the crime and was tried separately. At the brother's trial, a witness gave testimony that exculpated the brother but inculpated the defendant. At the defendant's trial, the witness testified that he did not want to testify in the case because he could not remember anything. The witness then proceeded to say that "he could not remember" to most questions posed to him. Over defense counsel's objections, the State introduced the witness' prior testimony from the brother's trial as substantive evidence under section 115—10.1. The trial court found that the testimony was properly admitted under section 115—10.1.

On appeal, the defendant argued that the witness' statement was improperly admitted. The defendant claimed that because the witness refused to answer questions during his testimony, he was not available for cross-examination. The *Wheatley* court disagreed and found that the witness was available for cross-examination and that his statement was properly admitted under section 115—10.1. *Wheatley*, 187 Ill. App. 3d at 381.

*Wheatley* is distinguishable from this case. In *Wheatley*, the witness was physically available for cross-examination at the defendant's trial. Here, Richardson was not available for cross-examination as required by section 115—10.1.

In *Morales*, when discussing the constitutionality of section 115—10.1, the court wrote:

"In enacting section 115—10.1, the legislature determined that prior inconsistent statements should be admitted substantively because: (1) the prior statement was made closer in time to the event in question than the statement at trial; (2) parties need protection from turncoat witnesses; (3) *the witness is available for*

*cross-examination, eliminating hearsay concerns of unavailability*; and (4) the admission of such statements furthers the search for truth in a criminal proceeding. [Citation.] In addition, the statute incorporates safeguards that foster reliability, such as the requirements that *the witness be available for cross-examination* and that the statement be made under oath or be the subject of the witness' personal knowledge." (Emphasis added.) *Morales*, 281 Ill. App. 3d at 702.

■ In *People v. Dixon*, 256 Ill. App. 3d 771 (1993), when determining if a witness was available for cross-examination, the court wrote:

"The second element of section 115—10.1 requires that the witness must be available for cross-examination concerning his prior statement. This requirement was unequivocally satisfied. At the conclusion of [the witness'] direct examination testimony, the trial court inquired as to whether defense counsel wanted to cross-examine [the witness]. Defense counsel responded, 'No cross, your Honor.' Defense counsel, then, had the full opportunity to cross-examine [the witness], who was readily available. This is all section 115—10.1 mandates." *Dixon*, 256 Ill. App. 3d at 776-77.

■ Here, Richardson was deceased at the time of trial and obviously unavailable for cross-examination. The fact that defense counsel conceded that if given the opportunity he would not have cross-examined Richardson any differently does not fulfill the section 115—10.1 requirement that the witness be available for cross-examination. Richardson, unlike the witnesses in *Wheatley* and *Dixon*, was unavailable for cross-examination as required by section 115—10.1, and as such, his testimony should not have been admitted as substantive evidence.

The State argues that Lee was not prejudiced as a result of Richardson's testimony being admitted and that any error that may have occurred was harmless error. We disagree.

In *People v. Illgen*, 204 Ill. App. 3d 701 (1990), following a jury trial, the defendant was convicted of the first-degree murder of his wife. The defendant claimed that he accidentally shot his wife while cleaning his gun. At trial, a witness, Svarz, testified as to several incidents in which the defendant allegedly physically abused his wife. The incidents purportedly occurred between 1972 and 1989, and the murder occurred in 1989. In particular, Svarz testified that in January 1982, the defendant's wife, Linda, enrolled in a center for abused women for six months. In October 1982, after Linda and the defendant reconciled, the defendant purportedly told Linda that he would kill her, their children, and himself if she ever left him again.

The *Illgen* court held that Svarz's testimony was improperly admitted. *Illgen*, 204 Ill. App. 3d at 704. In finding that the error was

not harmless, the court looked at how the testimony affected the jurors. The court wrote, "[d]uring deliberations, the jury requested the transcript of Svarz's testimony and asked for the dates of the incidents of abuse about which she testified. When questioned, the jury foreman specifically asked for the date on which the defendant threatened to kill himself, [and his family]. Accordingly, we find Svarz's testimony to be extremely prejudicial." *Illgen*, 204 Ill. App. 3d at 705.

In this case, during jury deliberations, the jury sent out three notes. In one note, the jury specifically asked to see Richardson's testimony from Milam's trial. Over the State's objection, the jury was given a transcript of the relevant portions of Richardson's previous testimony. Consequently, we find that Richardson's testimony was prejudicial.

## CONCLUSION

Accordingly, for the foregoing reasons, the decision of the trial court is reversed and remanded for a new trial.

Reversed and remanded.

CAMPBELL, P.J., and GREIMAN, J., concur.